UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ISAIAS BERMUDEZ, *pro se*,                                  :
                                                            :
                            Petitioner,                     :
                                                            :          **OPINION & ORDER**
            -against-                                       :            09-CV-1515(DLI)
                                                            :
JAMES T. CONWAY, Superintendent,                            :
                                                            :
                            Respondent.                     :
                                                            :
------------------------------------------------------------------ x
**DORA L. IRIZARRY, United States District Judge:**

*Pro se* petitioner Isaias Bermudez filed this Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* Petition ("Pet."), Doc. Entry No. 1.) Petitioner was convicted of Criminal Possession of a Weapon in the Second Degree, in violation of New York Penal Law § 265.03. (Spanakos-Orfan Affidavit, ("Resp. Aff."), Doc. Entry No. 8, ¶ 3.) The state court sentenced Petitioner as a second felony offender, to a definite term of imprisonment of ten years. (*Id*.) The Petition is construed as raising the following claims: (1) Petitioner's statutory and constitutional speedy trial rights were violated; (2) Petitioner's conviction is unsupported by the record; (3) Petitioner's conviction was obtained with uncorroborated accomplice testimony in violation of N.Y. Criminal Procedure Law § 60.22; (4) Petitioner was improperly indicted; (5) Petitioner was denied a fair trial as the trial court failed to instruct the jury on circumstantial evidence; (6) the state failed to meet its discovery obligations as set forth under N.Y. Criminal Procedure Law §§ 240.44 and 240.45; (7) prosecutorial misconduct; (8) ineffective assistance of counsel; and (9) actual innocence. Respondent opposes each of these grounds. (Respondent's Memorandum in Opposition ("Resp. Opp."), Doc. Entry No. 8.)

For the reasons set forth below, the Petition is denied in its entirety and is dismissed with

prejudice.

## BACKGROUND

On December 7, 2000, police officers in a patrol car responded to a 911 call regarding an attempted robbery and met with an individual named Alex Perez on the corner of 110th Street and Jamaica Avenue, in the 102 Precinct in Queens, New York. Within minutes, a livery cab driver approached them motioning for them to follow him. They followed the driver to 86th Avenue, where the driver pointed towards the sidewalk. The police found Petitioner and David Pabon hiding underneath vehicles parked on the street. Petitioner had a knife around his waistband. The police located a pistol underneath the vehicle that concealed Petitioner, within arm's reach of where Petitioner was hiding. Petitioner and Pabon were charged with one count of Attempted Robbery in the First Degree in violation of N.Y. Penal Law § 110/160.15[2], two counts of Attempted Robbery in the Second Degree in violation of N.Y. Penal Law § 110/160.10[1], [2A], and one count of Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law § 265.03[2]). (*See* Indictment, Queens County Indict. No. 3918-2000.) Pabon pled guilty to Attempted Robbery in the First Degree and Criminal Possession of a Weapon in the Second Degree and received a sentence of a term of imprisonment of three and one-half years.

## I. Pre-Trial Proceedings

Petitioner elected to proceed to trial and, prior to trial, engaged in motion practice. On November 13, 2002, Petitioner, who was represented by counsel, filed a *pro se* motion seeking dismissal on the ground that the delay in prosecuting his case violated his speedy trial rights guaranteed under the Sixth Amendment of the U.S. Constitution and N.Y. Criminal Procedure Law § 30.30. The trial court denied his motion with leave to file again upon consultation with

counsel. *See People v. Bermudez*, Indict. No. 3918-2000, Order dated Nov. 20, 2002. On January 13, 2003, counsel filed a brief on behalf of Petitioner, charging the state with 231 days of delay and seeking dismissal under the Sixth Amendment and N.Y. C.P.L. § 30.30. The trial court denied the motion, finding no speedy trial violations as the state was only responsible for 152 days of delay. *See People v. Bermudez*, Indict. No. 3918-2000, Order dated Feb. 27, 2003.

On June 24, 2002, Petitioner appeared with counsel before the trial court for an omnibus suppression hearing to address the photo array identification of Petitioner, the line-up identification of Petitioner, and the conversations between Petitioner and law enforcement officers after his arrest. (*See* June 24, 2002 Hearing Transcript, Indict. No. 3918-2000.) The hearing was continued to July 2, 2002. (*See* July 2, 2002 Hearing Transcript, Indict. No. 3917-2000, 3918-2000.) None of the parties have provided the Court with the rulings from this hearing nor are they discernible from the record submitted by respondent in connection with its opposition. Nonetheless, it does not appear that these rulings are essential to the resolution of Petitioner's claims.

On March 6, 2003, the trial court heard arguments and issued a *Sandoval* ruling.[1] The trial court held that the state could ask the Petitioner about: (1) a 1995 New York felony conviction for possession of a controlled substance; and (2) a 1998 Florida conviction for two felonies and one misdemeanor. (Trial Transcript ("Tr."), Indict. No. 3918-2000, 29:13-30:21.) With respect to these prior convictions, the trial court held that the state could inquire as to whether Petitioner was convicted of felonies and misdemeanors on those dates, but could not ask about the "underlying acts or the specific crimes." (Tr. 30:1-4.) Additionally, prior to the start of the trial, the state dismissed all of the counts against Petitioner, except for Criminal Possession

---

[1]  *People v. Sandoval*, 34 N.Y.2d 371 (1974). "In New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing, to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility." *Norde v. Keane,* 294 F. 3d 401, 408 n.1 (2d Cir. 2002).

of a Weapon in the Second Degree. Petitioner's counsel requested a ruling that would prohibit the state from asking any witnesses about the events underlying the armed robbery, and the trial court reserved its ruling. (Tr. 12:20-23.) The trial court later ruled that the state could not ask witnesses about the prior assault and attempted robbery that occurred on the night of Petitioner's arrest. (Tr. 71:16-17.)

## II.    The State's Case

The state called Detective Matthew Rottas as its first witness. Detective Rottas was the police officer who responded to the 911 call that ultimately led to Petitioner's arrest. (Tr. 287:15-348:8.) On the night of Petitioner's arrest, Detective Rottas and his supervisor, Lieutenant Chris Beyers, arrived on the scene of the crime and spoke with Alex Perez. They then followed the livery driver to 86th Avenue, and walked up and down the block looking for potential suspects. They saw Petitioner's legs sticking out from underneath a parked motor vehicle and ordered Petitioner to present himself. (Tr. 300:20-301:33.) Petitioner remained silent and did not move. (Tr. 301:4-12.) Detective Rottas pulled Petitioner from underneath the vehicle and arrested him. (Tr. 301:13-22.) Petitioner was wearing a dark hooded sweatshirt and black gloves. (Tr. 308:1-4; 310:1-8.) Detective Rottas searched Petitioner and found a knife. (Tr. 328:2-8.)

Lieutenant Beyers pulled a second individual, David Pabon, from underneath the other end of the vehicle and arrested him. (Tr. 308:16-309:10.) Detective Rottas then used a flashlight to search underneath the vehicle and found a firearm. (Tr. 328:9-21.) The firearm contained five bullets, four in the magazine and one in the chamber, and the safety lock was off. (Tr. 330:15-24.) Detective Rottas did not check the firearm for fingerprints. (Tr. 335:2-5.) The firearm was found within arm's reach of where Petitioner was hiding. (Tr. 336:1-9.) Detective Rottas

estimated that Pabon was found no less than eight feet away from the firearm. (Tr. 336:10-12.) Detective Rottas admitted that he did not check their hands for gunshot residue. (Tr. 341:23-342:1.) In a case like this, in which a firearm is located, but was not used in connection with a homicide or serious assault, the crime lab does not conduct fingerprint analysis. (Tr. 424:16-425:3.)

Detective Rottas admitted that neither he nor any other members of the police saw Petitioner touching the firearm before he was pulled from underneath the vehicle. (Tr. 339:17-19, 340:1-3, 340:22-341:1, 417:14-21.) Detective Rottas indicated that both Petitioner and Pabon were pulled from underneath the same vehicle. (Tr. 344:9-11.) Lieutenant Beyers testified for the state and clarified that Pabon's feet were underneath the same car as Petitioner, but that the majority of his body was underneath a second car that was parked next to the car concealing Petitioner. (Tr. 418:13-21.) In fact, Pabon's arms and hands were underneath the vehicle in front of the vehicle concealing Petitioner and the firearm. (Tr. 426:10-427:3.)

The state also called Detective John Cuebas, the officer who worked for the New York City Police Department Firearm Analysis Unit and who analyzed the firearm. During his investigation, Detective Cuebas was unable to trace ownership of the firearm. However, on the day that he testified, he received a report from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") indicating that the weapon was owned by an individual located in Virginia, who was neither Petitioner nor Pabon. (Tr. 392:20-394:3.)

At the conclusion of the state's case, defense counsel moved to dismiss the charge against Petitioner, contending that the state failed to establish that Petitioner knowingly possessed the firearm. (Tr. 433:1-434:2.) The trial court denied the motion. (Tr. 434:22-435:1.)

### III.    Defense Case

Petitioner testified at his trial.   (Tr. 436:25-450:17, 462:17-484:20.)   Additionally, Petitioner called Pabon to testify on his behalf.  (Tr. 491:19-538:4.)

### A.    Petitioner's Testimony

During direct examination, Petitioner testified that, on the night in question, he was hiding underneath a vehicle at 2:00 A.M. with Pabon.  (Tr. 438:14-22; 439:17-22.)  Petitioner stated that he and Pabon were facing each other underneath the vehicle.  (Tr. 440:24-441:10; 442:12-14.)  He explained that he was carrying a knife and that, when he and Pabon saw the police, they were "scared," and hid underneath the vehicle "like a reflex or like an instinct."  (Tr. 439:23-440:13.)  Petitioner stated that he carried the knife because he had been unarmed when assaulted a month before, and had suffered serious injuries.  (Tr. 440:14-20.)  Petitioner testified he did not know that Pabon possessed a firearm on that particular day, but that he had seen Pabon with firearms in the past.  (Tr. 445:15-446:5.)

During direct examination, Petitioner's attorney solicited the following testimony:

> Q:    Mr. Bermudez, in your lifetime, have you ever been arrested?
> A:    Yes, sir.
> * * *
> Q:    How many times have you been convicted of a crime?
> A:    Twice.
> Q:    And were those crimes felonies or misdemeanors?
> A:    Felonies.
> Q:    Both of them?
> A:    Yes, sir.
>
> Q:    And were you twice convicted by a jury or did you plead guilty?
> A:    I plead[ed] guilty.
> Q:    And why is that, sir?
> A:    I was guilty.
> Q:    On both occasions?

A:      Yes, sir.

(Tr. 437:16-438:9.)

Petitioner testified during cross-examination that he and Pabon were walking on the street at that hour because they were on their way to meet with two female friends of Pabon's.  (Tr. 448:13-449:19.)   The prosecutor asked Petitioner how long it took him to get from the neighborhood where he and Pabon lived to the location where he was arrested, and he estimated it took one to two hours.  (Tr. 450:3-5.)  The prosecutor then asked Petitioner what he and Pabon had done before they began their walk, to which he responded "[n]othing."  (Tr. 450:6-10.)

The judge then excused the jury for arguments regarding Petitioner's testimony on his prior convictions and his activities on the night of his arrest.  (Tr. 450:22-462:9.)  The judge permitted the state to clarify the number of Petitioner's prior convictions, including felonies and misdemeanors.  Petitioner testified on direct that he had two prior felony convictions; however, Petitioner pled guilty to one felony in 1995 and two felonies and one misdemeanor (arising out of one arrest) in 1998.  (Tr. 457:8-11)  The judge denied the state's request to inquire about Petitioner's convictions after he was arrested on this case, reaffirming his earlier ruling.  (Tr. 457:19-21.)  The trial court explained that defense counsel should have structured the question regarding Petitioner's prior convictions differently, and that, as asked, opened the door for further clarification from the state.  (Tr. 457:4-5.)  Additionally, because Petitioner said that he was doing "nothing" before deciding to hide under the vehicle, the trial court ruled that the state could ask him if he saw Pabon strike anyone earlier in the evening.  (Tr. 461:1.)

The state then continued its cross-examination of Petitioner.  When asked whether he saw Pabon assault anyone on their walk from Brooklyn, Petitioner said:  "No, ma'am.  David Pabon never assaulted nobody."  (Tr. 463:1-10.)  He denied that the assault was the reason the police

were called to the crime scene that evening and he denied that the assault was the reason that they were hiding. (Tr. 463:11-20.) With respect to his prior convictions, Petitioner admitted to a felony conviction in 1995, a misdemeanor conviction in 1996, and two felonies and one misdemeanor in 1998. (Tr. 464:3-465:11.) He admitted that he had more than two convictions in his lifetime (Tr. 465:12-13), which was in direct conflict with his earlier testimony (Tr. 437:16-438:9).

### B. Pabon's Testimony

Pabon testified that, on the evening of their arrest, he was carrying the firearm found near Petitioner. (Tr. 495:8-496:3, 18-20.) He stated that they hid from the police underneath vehicles and, once he was underneath a vehicle, he threw the firearm. (Tr. 497:13-25.) He testified that he pled guilty to assault and possession of a weapon. (Tr. 499:19-21.) On cross-examination, Pabon admitted that he assaulted another individual just before he and Petitioner hid underneath the vehicles (Tr. 506:16-17), which contradicted Petitioner's testimony (Tr. 463:1-10). When confronted with the minutes from his plea allocution, Pabon refused to admit that he pled guilty to attempted robbery rather than assault. (Tr. 510:4-6.) He also refused to admit that he testified at his plea allocution that Petitioner acted in concert with him with respect to the attempted robbery and that it was Petitioner who possessed the firearm that night. (Tr. 510:7-511:15; 512:16-18.) He conceded that due to the darkness of the night, he was unable to determine whether he and Petitioner were facing each other underneath the vehicle or whether his feet were towards Petitioner's face. (Tr. 521:19-22.)

### IV. Summations

During closing arguments, Petitioner's counsel argued that the state failed to establish that Petitioner knowingly possessed the firearm, whether under a theory of actual or constructive

8

possession. In particular, defense counsel reiterated that: (1) both Petitioner and Pabon were under the vehicle where the firearm was found; (2) the police did not check the firearm for fingerprints or the Petitioner for gunshot residue; (3) Pabon admitted that the firearm was his, and; (4) Pabon admitted that he threw the firearm under the vehicle. (Tr. 548:21-556:22.) During closing arguments, the prosecutor argued the state had established that Petitioner, acting in concert with Pabon, possessed the firearm. (Tr. 556:24-569:22.) With respect to Pabon's claim that he pled guilty to assault rather than attempted robbery, the prosecutor stated:

> The evidence shows, that is, Mr. Pabon plead [sic] guilty not to assault, as the [Petitioner] would have him believe and possession of the weapon, but rather to an attempted robbery, acting in concert with another individual, and possession of a weapon, acting in concert with another individual, with intent to unlawfully use against another, and the evidence also showed that the only other individual with David Pabon on December 7, 2000, was him, [Petitioner].

(Tr. 558:3-11.) The prosecutor pointed out inconsistencies between the testimony of Pabon and Petitioner, as well as between Petitioner's testimony and that of the law enforcement witnesses. (Tr. 558:15-560:12; 561:14-21.) The prosecutor also argued that Pabon's testimony regarding his ownership of the firearm was not credible because he waited several years before admitted it was his, while, Petitioner, his self-professed close friend, remained in custody pending disposition of the firearm charge. (Tr. 564:20-25; 567:17-569:5.)

## V. Jury Verdict and Sentencing

In addition to standard charges on principles such as reasonable doubt and the elements of the crime, the trial court instructed the jury on constructive possession. (Tr. 585:12-586:1.) The trial court did not instruct the jury on circumstantial evidence or on the duty to refrain from finding Petitioner liable simply because his co-defendant, Pabon, pled guilty. During deliberations, the jury requested a second reading of the constructive possession charge, which

the court granted. (Tr. 601:11-602:4.) The jury also requested readings from Pabon's testimony and instructions on reasonable doubt and the elements of the offense. The jury deliberated for three days, ultimately finding Petitioner guilty of criminal possession of a weapon in the second degree. Defense counsel moved to set aside the verdict.[2] On April 4, 2003, Petitioner was sentenced as a second felony offender and received a sentence of a definite term of incarceration of ten years.

## VI. Post-Conviction Litigation

On appeal, Petitioner argued that (1) the state failed to prove that he knowingly or constructively possessed the firearm; (2) the trial court erred in failing to instruct the jury on circumstantial evidence as the state's case was based entirely on circumstantial evidence of constructive possession; and (3) the prosecutor improperly urged the jury to consider Pabon's guilty plea as evidence of Petitioner's guilt. (Petitioner's Appellate Brief ("Pet. App. Br."), at 3.) Petitioner also filed a supplemental *pro se* brief, again arguing that both his statutory and constitutional speedy trial rights were violated. (Petitioner's *Pro Se* Supplemental Brief ("Pet. *Pro Se* Br."), at 3.)

The Appellate Division, Second Department, affirmed Petitioner's conviction. *See People v. Bermudez*, 36 A.D.3d 928 (2d Dep't. 2007). The Appellate Division held that the state's case "was legally sufficient to establish the [Petitioner's] guilt beyond a reasonable doubt" and that the "verdict of guilt was not against the weight of the evidence." *Id*. With respect to Petitioner's claim regarding the prosecutor's comments during closing arguments, the Appellate Division rejected his claim as "unpreserved for appellate review," explaining that Petitioner's counsel "either failed to object to the remarks or, when an objection was made,

---

[2] The Court notes that the information regarding Petitioner's motion to set aside the verdict was obtained from Petitioner's Appellate Brief. The state failed to submit any documentation of this motion in the record. Nonetheless, the specifics of defense counsel's arguments are not at issue in this action.

failed to request further instructions or move for a mistrial after the court issued a curative instruction." *Id*. However, the court also ruled that the comments "constituted fair response to comments made during the [Petitioner's] summation." *Id*. The Appellate Division rejected Petitioner's *pro se* speedy trial appeal as "without merit." *Id*. Finally, the Appellate Division held that Petitioner's "remaining contention is unpreserved for appellate review." *Id*. Petitioner sought leave from the New York Court of Appeals, seeking to appeal each of the grounds asserted in his main and supplemental *pro se* appellate briefs, which the Court of Appeals denied. *See People v. Bermudez*, 8 N.Y.3d 944 (2007).

Petitioner then moved, *pro se*, to vacate his conviction, pursuant to N.Y. Criminal Procedure Law § 440.10. (*See* Petitioner's 440.10 Brief ("Pet. 440 Br.").) Petitioner contended his conviction should be vacated because: (1) his statutory and constitutional speedy trial rights were violated, (2) the prosecutor improperly changed her theory of the case from actual to constructive possession, (3) the prosecutor engaged in misconduct during summation, (4) the trial court failed to instruct the jury on accomplice testimony, (5) the prosecutor failed to turn over *Rosario* material, and (6) he received ineffective assistance of counsel. Petitioner's motion to vacate was denied in its entirety. *See People v. Bermudez*, Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007. The court rejected Petitioner's claims finding them "unpersuasive and without merit." *Id*. The court also rejected the claims as procedurally barred under N.Y. Criminal Procedure Law § 440.10(2)(c), as Petitioner "raised or should have raised these claims on appeal." *Id*. In addition to the procedural bar, with respect to Petitioner's ineffective assistance of counsel claim, the court held that Petitioner failed to establish prejudice and "failed to provide any objective evidence to support his claims." *Id*. Petitioner sought leave to appeal, which was denied. *See People v.*

*Bermudez*, Appellate Division, Second Department, Decision & Order dated Nov. 13, 2008.

Petitioner then moved for a writ of error *coram nobis* based on ineffective assistance of appellate counsel, contending that appellate counsel failed to argue that: (1) the indictment was defective because it was not signed by the foreman or the District Attorney; (2) the state failed to corroborate Pabon's testimony; and (3) Petitioner's trial counsel was ineffective for his failure to (a) request Petitioner's immediate release on his speedy trial motion or a hearing on the motion; (b) make proper objections; (c) request a circumstantial evidence charge; and (d) craft a better question to elicit testimony from Petitioner regarding his prior convictions. The Appellate Division, Second Department, denied Petitioner's motion, holding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *See People v. Bermudez*, 57 A.D.3d 555 (2d Dept. 2008). The New York State Court of Appeals denied leave to appeal. *See People v. Bermudez*, 13 N.Y.3d 834 (2009).

Petitioner filed the instant action on April 10, 2009, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition is construed as raising the following claims: (1) Petitioner's statutory and constitutional speedy trial rights were violated; (2) Petitioner's conviction is unsupported by the record; (3) Petitioner's conviction was obtained with uncorroborated accomplice testimony, in violation of N.Y. Criminal Procedure Law § 60.22; (4) Petitioner was improperly indicted; (5) Petitioner was denied a fair trial as the trial court failed to instruct the jury on circumstantial evidence; (6) the state failed to meet its discovery obligations as set forth under N.Y. Criminal Procedure Law §§ 240.44 and 240.45; (7) prosecutorial misconduct; (8) ineffective assistance of counsel; and (9) actual innocence.

# DISCUSSION

## I.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a Petitioner's federal claims on the merits.  Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.  A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

13

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F. 3d 565, 569 (2d Cir. 2005) (citation and internal quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F. 3d 917, 922 (2d Cir. 1998) (citation omitted).

## II. Procedural Default

District courts cannot review a state prisoner's federal claims, if they are barred from federal review by an independent and adequate state ground, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). When a state court concludes that a claim is unpreserved for appellate review, this is "an independent and adequate state ground that bars a federal court from granting habeas relief." *Butler v. Cunningham*, 313 F. App'x 400, 401 (2d Cir. 2009) (citing *Coleman*, 501 U.S. at 750); *see also Reid v. Senkowski*, 961 F. 2d 374, 377 (2d Cir. 1992). Therefore, if a state court's holding contains a statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits "in any event." *See Fama v. Comm. of Corr. Servs.*, 235 F. 3d 804, 811 n.4 (2d Cir. 2000); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

If a claim has been procedurally defaulted in state court, a federal court may address its merits only if the petitioner demonstrates cause for the default and prejudice to the petitioner or that a fundamental miscarriage of justice will occur if the court does not review the claim. *See Murray v. Carrier*, 477 U.S. 478, 485, 492 (1986); *Wainright v. Sykes*, 433 U.S. 72, 87 (1977); *Bossett v. Walker*, 41 F. 3d 825, 829 (2d Cir. 1994). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Clark v. Perez*, 510 F. 3d 382 (2d Cir. 2008). To establish prejudice, petitioner must show that the alleged violation "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

## III. Exhaustion

Under 28 U.S.C. § 2254(b) and (c) a petitioner must exhaust his or her state court remedies before a federal court may grant habeas relief to a petitioner in state custody. *Galdamez v. Keane*, 394 F. 3d 68, 72 (2d Cir. 2005). The exhaustion of state remedies requirement means that a petitioner must present his or her claim to the highest court of the state. *Harris v. Fischer*, 438 F. App'x 11, 13 (2d Cir. 2011) (citing *Galdamez*, 394 F. 3d at 73). A claim is properly exhausted when the state court has been "fairly apprised" of the factual and legal premises of the constitutional claim. *Id.* (citing *Grey v. Hoke*, 933 F. 2d 117, 119 (2d Cir. 1991)).

## IV. Application

### A. Speedy Trial

Petitioner contends that his statutory and constitutional speedy trial rights were violated.

In particular, Petitioner contends that the trial court erred in denying his speedy trial motion because: (1) the trial court misread the "crims appearance menu" and the actual transcripts of his pre-trial proceedings indicate significant delay; (2) there was no evidence presented by the state that controverted the alleged violations; (3) the transcripts of the pre-trial proceedings were inaccurate as Petitioner never consented to adjournments; and (4) the trial court improperly attributed delay to Petitioner. Petitioner raised these issues in his *pro se* supplemental appellate brief. The Appellate Division denied Petitioner's appeal, ruling that his speedy trial claims were "without merit." *See People v. Bermudez*, 36 A.D.3d 928-29 (2d Dept. 2007). The New York State Court of Appeals denied leave to appeal. *See People v. Bermudez*, 8 N.Y.3d 944 (2007). Thus, Petitioner's speedy trial claims were exhausted before he sought federal habeas review of them.

To the extent that Petitioner raises speedy trial violations premised on N.Y. Criminal Procedure Law § 30.30, a state statutory protection, his claims are not cognizable on federal habeas review. *See, e.g.*, *Hodges v. Bezio*, 2012 WL 607659, *4 (E.D.N.Y. Feb. 20, 2012) (denying Petitioner's Section 30.30 speedy trial claim as "any alleged violation of New York's statutory speedy trial provision is a *state law* claim not cognizable on federal habeas review"). Accordingly, Petitioner's Section 30.30 speedy trial claims are dismissed with prejudice.

Petitioner also challenged his pre-trial delay as a violation of the Sixth Amendment, which guarantees the "right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has held that it is "impossible to determine with precision when [the federal constitutional right to a speedy trial] has been denied" and has found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker v. Wingo*, 407 U.S. 514, 523 (1972). Instead, the Court adopted a balancing test that "compels

courts to approach speedy trial cases on an ad hoc basis," considering factors that include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*. at 530.

The first Barker factor weighs in Petitioner's favor as the overall delay between his arrest and his trial was 27 months or 810 days. *See Doggert v. United States*, 505 U.S. 647, 652 n.1 (1992) (noting that lower courts have found that a post-accusation delay of one year is "presumptively prejudicial," meaning that the delay is unreasonable enough to trigger *Barker* analysis). However, the remaining factors weigh in the state's favor. Much of the complained of delay is attributable to Petitioner as Petitioner consented to adjournments, engaged in motion practice, refused to appear on numerous occasions, and sought and received new counsel three times. (*See* Resp. at pp. 21-23 (citing pre-trial transcripts for calendar dates and motion practice).) The portion of the delay attributable to the state—167 days— is not unreasonable. *See Hodges*, 2012 WL 607659, at *5 (concluding that a delay of 29 months, even if the entire period is attributable to the prosecution, "easily falls within the range of delays found to be acceptable for speedy trial purposes under the federal Constitution"). Furthermore, Petitioner did not aggressively assert his right to a speedy trial as he waited until November 13, 2002, nearly twenty-four months after his arrest, to first assert his right. *See United States ex rel. Eccleston v. Henderson*, 534 F. Supp. 813, 816 (E.D.N.Y. 1982) (finding that "petitioner did not assert his right aggressively enough" as petitioner raised the issue only one time and nine months after his arrest). Finally, Petitioner suffered no prejudice from the delay. There is nothing in the record to indicate that he was unable to call witnesses or that the witnesses could no longer recall the events that transpired on the night of his arrest.

As the foregoing analysis indicates, the state court's resolution of these claims did not

contravene or unreasonably apply settled Supreme Court law.  Accordingly, Petitioner's speedy trial claims are dismissed with prejudice.

### B.    Sufficiency of the Evidence

Petitioner assails the legal sufficiency of the evidence presented at trial, contending that the state failed to adduce sufficient proof of each element of the crime charged—possession of a weapon in the second degree.  (Pet. ¶ 12.)  Petitioner moved for dismissal at the conclusion of the state's case and to set aside the jury verdict on the ground that the state failed to adduce legally sufficient proof.  The trial court denied both of these motions.  On appeal, Petitioner argued that the state failed to prove that he had either actual or constructive possession of the firearm, as he was not the legal owner of the firearm, there was no evidence that he possessed it, and no evidence that he acted in concert with Pabon, who admitted that it was his and that he possessed it on the night of their arrests.  The Appellate Division denied his claim, holding that the state's case "was legally sufficient to establish the [Petitioner's] guilt beyond a reasonable doubt" and that the "verdict of guilt was not against the weight of the evidence."  *See People v. Bermudez*, 36 A.D.3d 928-29 (2d Dept. 2007).  The New York State Court of Appeals denied leave to appeal.  *See People v. Bermudez*, 8 N.Y.3d 944 (2007).  Thus, Petitioner's claim challenging the sufficiency of the evidence is properly before this Court as it was exhausted in the state courts.[3]

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'"  *Jackson v. Virginia*, 443 U.S. 307,

---

[3]    To the extent the Petition can be construed as arguing that the verdict was against the weight of the evidence, that claim is not properly before this Court, as it was not exhausted in the state courts.  More importantly, that claim is not cognizable on federal habeas review.  *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.").

315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt."  *Jackson*, 433 U.S. at 317.  Thus, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Id*. at 324.

A habeas Petitioner challenging the sufficiency of the evidence faces a "very heavy burden."  *United States v. Carson*, 702 F. 2d 351, 361 (2d Cir. 1983).  As the Supreme Court explained:

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 318-19 (citations omitted).  This rigorous "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id*. at 324 n.16.

Under New York law, a defendant is guilty of possession of a weapon in the second degree when the evidence demonstrates that the defendant possessed a loaded firearm with the intent to use the firearm unlawfully against another individual.  N.Y. Penal Law § 265.03.  Possession may be proven by either actual physical possession or by constructive possession.  *See* N.Y. Penal Law § 10.00(8).  "A person has constructive possession of a loaded firearm if he

exercises 'dominion or control' over the area in which the weapon and ammunition is found." *See Gomez-Kadawid v. Kirkpatrick*, 2011 WL 2581838, at *9 (S.D.N.Y. May 5, 2011) (citing *People v. Manini*, 79 N.Y.2d 561, 573 (1992)). Possession of an unlicensed, loaded firearm is presumptive evidence of the intent to use the firearm unlawfully against another. *See* N.Y. Penal Law § 265.15(4).

In the instant action, the state established Petitioner's constructive possession of the firearm. Detective Rottas testified that the weapon was found under the vehicle concealing Petitioner within arm's reach of Petitioner. (Tr. 328:9-21; 336:1-9.) The firearm was loaded and ready to fire as the safety trigger was off. (Tr. 330:15-24.) Lieutenant Beyers testified that the majority of Pabon's body was underneath another vehicle and that only Pabon's feet were underneath the vehicle concealing Petitioner. (Tr. 418:13-21.) According to Lieutenant Beyers, the firearm was not within Pabon's arm's reach, as Pabon's hand and arms were underneath the other vehicle. (Tr. 425:10-427:3.) Petitioner and Pabon testified otherwise. Petitioner and Pabon testified that they were hiding underneath the same vehicle facing each other. (Tr. 439:17-22; 440:24-441:10; 442:12-14.) Petitioner claimed the firearm belonged to Pabon and he did not know Pabon was carrying it that evening and that he never saw the firearm that evening. (Tr. 445:15-446:5.) Pabon testified that the firearm was his and that he threw it when they hid from the police and did not see where it landed. (Tr. 495:8-496:3, 18-20; 521:19-22.)

The state presented evidence in the form of testimony from two law enforcement officers that established the firearm was located in an area over which Petitioner exercised dominion or control. The jury also heard testimony from Petitioner and Pabon that attempted to refute the testimony of the law enforcement officers. The jury resolved this conflicting testimony in favor of the state and, in doing so, found the state's witnesses more credible than Petitioner and Pabon.

A review of the record supports their credibility determinations, as Petitioner and Pabon were impeached during cross-examination on numerous issues and there were several inconsistencies in their descriptions of the events of that night. It would be improper for a habeas court to overturn the credibility determinations of the jury. Indeed, it is clear from the record that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As such, the state court's resolution of this claim did not contravene or unreasonably apply settled Supreme Court law. Accordingly, Petitioner's sufficiency of the evidence claim is dismissed with prejudice.[4]

### C. Uncorroborated Accomplice Testimony

Petitioner contends that he was convicted based on Pabon's uncorroborated testimony, in violation of N.Y. Criminal Procedure Law § 60.22. Petitioner first raised this claim in his 440 Motion, which the state court rejected as "unpersuasive and without merit." *See People v. Bermudez*, Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007. Additionally, the court rejected the claims as procedurally barred under N.Y. Criminal Procedure Law § 440.10(2)(c),[5] as Petitioner "raised or should have raised these claims on appeal." *Id.* Petitioner sought leave to appeal, which was denied. *See People v. Bermudez*, Appellate Division, Second Department, Decision & Order dated Nov. 13, 2008.

---

[4]   To the extent that Petitioner's sufficiency of the evidence claim challenges proof of any of the other elements of the crime, it would be improper for this Court to address the merits of such claims as they were not raised in the state court and, thus, were not exhausted.

[5]   Under N.Y. Criminal Procedure Law § 440.10(2)(c), a claim is procedurally barred from appellate review if the facts underlying the claim were in the record at the time of a defendant's appeal and the defendant omitted that claim from his or her appeal. *See* N.Y. Crim. Pro. L. § 440.10(2)(c) ("Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .").

The Court must dismiss this claim. First, this claim is procedurally barred from federal habeas review as it was rejected by the state court on an independent and adequate state law ground. *See Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (E.D.N.Y. 2003) ("The Second Circuit and this Court have previously held that the denial of a § 440.10 motion for failure to raise a claim on direct appeal represents the application of a 'firmly established and regularly followed' New York rule.") (quoting *Arce v. Smith,* 889 F. 2d 1271, 1273 (2d Cir. 1989)). Second, Petitioner cannot show any prejudice from this ruling as there is no merit to his claim. Under N.Y. Criminal Procedure Law § 60.22, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." This protection is inapplicable to the instant action as it was Petitioner, and not the state, who called his accomplice, Pabon, to testify. The state had met its evidentiary burden prior to Pabon taking the stand and the state is not required to call any witnesses to corroborate the testimony of a witness for the defense. Accordingly, Petitioner's claim arising out of uncorroborated accomplice testimony is dismissed with prejudice.

## D.     Sufficiency of the Indictment

Petitioner contends that the indictment was insufficient because it did not name him. Petitioner did not raise this theory before the state courts, and thus, it is unexhausted. Nonetheless, it is entirely lacking in merit as the Petitioner is named in the caption of the indictment and he and his co-defendant are referred to as "Defendants" throughout the body of the indictment.[6] In his motion for a writ of error *coram nobis*, Petitioner assailed his indictment

---

[6]     Although this claim (and a few others) was not exhausted, the Court has the authority to address such claims on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see also Rhines v. Weber,* 544 U.S. 269, 277 (2005) ("[E]ven if a petitioner had good cause for [failing to present his

on the ground that it was not signed by the foreperson or the District Attorney. To the extent the Petition can be construed as asserting this claim, it, too, lacks merit. Both the foreperson and the District Attorney signed his indictment.

**E.    Circumstantial Evidence Jury Charge**

Petitioner contends that he was denied a fair trial by the court's failure to instruct the jury on circumstantial evidence. Petitioner raised this claim on appeal, and it was denied as "unpreserved for appellate review," without citation to any specific authority. *See People v. Bermudez*, 36 A.D.3d 928-29 (2d Dept. 2007). The Court assumes that this ruling was premised on the fact that Petitioner did not request a circumstantial evidence jury instruction. Nonetheless, this claim is not cognizable on federal review. There is no federal constitutional right to a circumstantial evidence jury instruction. *See Martinez v. Reynolds,* 888 F. Supp. 459, 464 (E.D.N.Y.1995) (denying habeas relief in part because "the constitutional right to due process does not require a court to give . . . special jury instructions when a case is founded on circumstantial evidence") (citing *Holland v. United States,* 348 U.S. 121, 140 (1955)). Further, "[t]o the extent Petitioner's claim is grounded in state law exclusively, the claim is unreviewable by a federal habeas court." *See Parisi v. Artus*, 2010 WL 4961746, at *4 (E.D.N.Y. Dec. 1, 2010) (dismissing petitioner's claim based on the trial court's denial of his request for a circumstantial evidence jury instruction). Moreover, even if Petitioner had requested the jury instruction and the court denied his request, the claim would fail. "A special instruction on circumstantial evidence is required under New York law only when the prosecution's case rests *solely* on circumstantial evidence." *Id*. at *6 (emphasis in original) (citing *People v. Ruiz*, 52 N.Y.2d 929 (1981)). Contrary to Petitioner's claims, the prosecution presented both

---

claims first to the state courts], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

circumstantial and direct evidence. Thus, under New York law, this claim would fail. Accordingly, Petitioner's claim is dismissed with prejudice.

### F. Discovery Violations

Petitioner contends that the state violated its pre-trial discovery obligations under N.Y. Criminal Procedure Law §§ 240.44 and 240.45, which essentially, is a claim assailing the state for failing to adhere to the discovery requirements set forth in *People v. Rosario*, 9 N.Y.2d 286 (1961). Petitioner faults the state for failing to provide him with transcripts of grand jury testimony from Detectives Rottas and Frank P. Lorelli, with respect to a separately indicted case against Petitioner, and transcripts of grand jury testimony from Detective Cuebas and Lieutenant Beyers in the criminal case underlying the instant petition. (Pet. ¶¶ 16(A-J).) Petitioner contends that Detective Rottas perjured himself by testifying that he was the arresting officer of the separately indicted case against Petitioner, when he was not, and by testifying that Petitioner was involved in an attempted robbery "for an unknown material" instead of, as he later testified, "money." (Pet. ¶¶ 16(C-D, H).) With respect to the transcripts of the grand jury testimony of Detectives Lorelli (who testified before the grand jury that indicted Petitioner on the separate indictment), Cuebas, and Lieutenant Beyers, Petitioner asserts that the transcripts could have "support[ed] a defense of police fabrication." (Pet. ¶ 16(G).)

Petitioner first raised this claim in his 440 Motion. The state court rejected this claim as procedurally barred under N.Y. Criminal Procedure Law § 440.10(2), as Petitioner "should have raised these claims on appeal." *See People v. Bermudez*, Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007. The Appellate Division denied leave to appeal. *See People v. Bermudez*, Appellate Division, Second Department, Decision & Order dated Nov. 13, 2008. This claim is procedurally barred from

federal habeas review as it was rejected by the state court on an independent and adequate state law ground. *See supra*, Part IV.C (explaining that rejection of a claim in state court pursuant to N.Y. Crim. Pro. L. § 440.10(2) operates to bar federal habeas review of that claim). Moreover, Petitioner's *Rosario* claim is not cognizable on federal habeas review. *See, e.g.*, *Green v. Artuz*, 990 F. Supp. 267, 274 (S.D.N.Y. 1998) (noting that "the failure to turn over *Rosario* material is not a basis for federal habeas relief as the *Rosario* rule is purely one of a state law"). Finally, to the extent the Petition can be construed as raising a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the claim lacks merit. There is nothing in the record to suggest that Petitioner was prejudiced by these alleged discovery violations. Accordingly, Petitioner's discovery claims are dismissed with prejudice.

### G.     Prosecutorial Misconduct

Petitioner contends that the prosecutor unfairly: (1) questioned him during cross-examination about his prior convictions; (2) asked him during cross-examination whether he witnessed Pabon assault anyone on the night of their arrest; (3) impeached Pabon with Pabon's plea allocution, thereby putting facts of the attempted robbery before the jury in violation of the trial court's earlier ruling; and (4) argued during summation that: (a) Pabon's guilty plea is evidence of Petitioner's guilt, and (b) Pabon and Petitioner were cousins. On appeal, Petitioner raised only one of these grounds—that the prosecutor improperly urged the jury to consider Pabon's guilty plea as evidence of Petitioner's guilt. (Pet. App. Br. at 3.) The Appellate Division held that this claim was "unpreserved for appellate review" because Petitioner's counsel "either failed to object to the remarks or, when an objection was made, failed to request further instructions or move for a mistrial after the court issued a curative instruction." *People v. Bermudez*, 36 A.D.3d 928-29 (2d Dept. 2007). The Appellate Division also held that the

comments "constituted fair response to comments made during the [Petitioner's] summation." *Id*.  In his 440 Motion, Petitioner raised the same ground and also urged the state court to vacate his conviction because the prosecutor told the jury that he and Pabon were cousins.  (Pet. 440 Br. at 13.)  The court rejected the claims as "unpersuasive and without merit."  *People v. Bermudez*, Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007.  Additionally, the court held that the claims were barred under N.Y. Criminal Procedure Law § 440.10(2)(c), as Petitioner "raised or should have raised these claims on appeal."  Petitioner did not raise any of the other grounds during his state court litigation.

As the foregoing makes clear, none of the grounds asserted in support of Petitioner's prosecutorial misconduct claim are properly before this Court.  Petitioner never raised grounds 1-3 in the state courts.  As such, he did not exhaust them.  Nonetheless, if Petitioner was to attempt to assert these claims in state court via a 440 motion or a writ of error *coram nobis*, the state court would reject them as they could and should have been raised on direct appeal.  *See* N.Y. Criminal Procedure Law § 440.10(2)(c).  Under these circumstances, a federal habeas court deems the claims exhausted, but declines to review the claims as "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim."  *Gray v. Netherland,* 518 U.S. 152, 162 (1996).  Thus, this Court is prevented from reviewing grounds 1-3 under an independent and adequate state law ground.  In any event, these claims lack merit as Petitioner and Pabon opened the door for the prosecutor's questions.  *See United States v. Beverly*, 5 F. 3d 633, 639-40 (2d Cir. 1993) (rejecting defendant's prosecutorial misconduct argument and explaining that "the government's opportunity to impeach the defendant's

credibility once he has taken the stand includes the opportunity to use evidence that it was barred from using on its direct case").

To the extent that Petitioner's prosecutorial misconduct claim is premised on the prosecutor's comments during summation about Pabon's plea allocution, the claim is procedurally barred. The Appellate Division rejected this ground because defense counsel failed to lodge a contemporaneous objection. "It is well settled that New York's contemporaneous objection rule, codified at N.Y. C.P.L. § 470.05, is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review." *See Rivera v. Graham*, 2012 WL 397826, at *4 (E.D.N.Y. Feb. 7, 2012) (citing *Downs v. Lape*, 657 F. 3d 97, 104 (2d Cir. 2011)); *Robbins v. Connelly*, 2011 WL 2748679, at *3 (E.D.N.Y. July 13, 2011) (rejecting petitioner's claim as procedurally barred and explaining that "[w]here a state court finds a claim of prosecutorial misconduct unpreserved because defense counsel failed to satisfy the contemporaneous objection rule, the petitioner's procedural default constitutes an independent and adequate state law ground for rejecting his habeas claim.").

Petitioner has made no attempts to demonstrate cause or prejudice and cannot demonstrate prejudice as this claim lacks merit. First, the prosecutor did not, as Petitioner suggests, instruct the jury to find Petitioner guilty based on Pabon's guilty plea. Rather, the prosecutor structured her summation to remind the jury of Pabon's contradictory testimony regarding his guilty plea. Initially, Pabon testified that he pled guilty to assault and criminal possession of a weapon, and that he was the individual holding the firearm that night. The prosecutor reminded the jury that the transcript of Pabon's plea allocution, as revealed during cross-examination, bore out different details: Pabon pled guilty to "attempted robbery, acting in concert with another individual, and possession of a weapon, acting in concert with another

individual" and Pabon told the state court that Petitioner held the firearm that night.  (Tr. 558:3-11.)  Thus, this argument was not improper as it did not mislead the jury on the appropriate legal standards for determining Petitioner's guilt.   Second, the prosecutor was able to solicit this testimony from Pabon because Petitioner called Pabon as a witness and Pabon's direct testimony included statements that were in conflict with statements he made during his plea allocution. Neither the prosecutor's questions during cross-examination nor the prosecutor's comments during summation were improper.  *See United States v. Tocco*, 135 F. 3d 116, 130 (2d Cir. 1998) ("The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence.") (citing *United States v. Myerson,* 18 F. 3d 153, 163 (2d Cir. 1994)); *Osario v. Conway*, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007) (dismissing petitioner's prosecutorial misconduct claim, because, among other infirmities "none of the prosecutor's statements or actions were improper, as they were based on inferences fairly drawn from the evidence presented at trial").

Finally, to the extent that Petitioner's prosecutorial misconduct claim is premised on the prosecutor's comment during summation that Petitioner and Pabon were cousins, the claim is procedurally barred from federal habeas review.  Petitioner first asserted this claim in his 440 Motion, which was rejected because it could and should have been raised on direct appeal.  *See* N.Y. Criminal Procedure Law § 440.10(2)(c).  Petitioner has made no attempt to establish cause or prejudice, and cannot establish prejudice as the claim lacks merit.  Pabon testified that the Petitioner was his cousin.  (Tr. 534:7-8.)  There is nothing improper about the prosecutor's restatement of this admission during summations.   Accordingly, Petitioner's prosecutorial misconduct claim is dismissed with prejudice.

### H.     Ineffective Assistance of Counsel

Petitioner contends that he was denied the effective assistance of counsel, in violation of the Sixth Amendment.   Specifically, Petitioner asserts that trial counsel failed to:   (1) successfully litigate the speedy trial motion; (2) investigate false statements contained in the "crims appearance menu" and to request an evidentiary hearing to resolve the alleged inconsistencies between the "crims appearance menu" and the transcripts of pre-trial proceedings; (3) solicit testimony regarding Petitioner's prior convictions in a manner that would not overturn the trial court's *Sandoval* ruling; (4) object to prejudicial closing arguments; (5) request an accomplice jury charge; and (6) request a circumstantial evidence charge.   Petitioner first raised a claim for ineffective assistance of counsel, asserting each of these grounds, in his 440 Motion.   (Pet. 440 Mot. pp. 13-17.)   The trial court rejected his claim as procedurally barred under N.Y. Criminal Procedure Law § 440.10(2)(c) as Petitioner "should have raised these claims on appeal."   Additionally, the trial court held that Petitioner failed to establish prejudice and "failed to provide any objective evidence to support his claims."   Petitioner sought leave to appeal, which was denied.[7]

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defense."   U.S. Const. amend. VI.   "[T]he right to counsel is the right to the effective assistance of counsel."   *McMann v. Richardson*, 397 U.S. 759, 771 n.14

---

[7]     Petitioner then moved for a writ of error *coram nobis* based on ineffective assistance of appellate counsel, contending that appellate counsel failed to argue that:  (1) the indictment was defective because it was not signed by the foreman or the District Attorney; (2) the state failed to corroborate the testimony given by Pabon; and (3) Petitioner's trial counsel was ineffective for his failure to: (a) request Petitioner's immediate release on his speedy trial motion or a hearing on the motion; (b) make proper objections; (c) request a circumstantial evidence charge; and (d) craft a better question to elicit testimony from Petitioner regarding his prior convictions.  The Appellate Division, denied Petitioner's motion, holding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel."  *See People v. Bermudez*, 57 A.D.3d 555 (2d Dept. 2008).  The New York Court of Appeals denied leave to appeal.  *See People v. Bermudez*, 13 N.Y.3d 834 (2009).  There is nothing in the petition or in the accompanying memorandum of law to suggest that Petitioner is asserting these grounds in the instant action. Accordingly, the Court will not address these claims.

(1970). To prevail on an ineffective assistance of counsel claim, petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id*.

"The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *U.S. v. Birkin*, 366 F. 3d 95, 100 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* , 466 U.S. at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

### 1. Exhaustion and Procedural Default

As a preliminary matter, Petitioner's claims regarding his trial counsel are procedurally defaulted as New York rejected them on an independent and adequate state procedural rule— N.Y. Criminal Procedure Law § 440.10(2). *See Murden v. Artuz,* 497 F. 3d 178, 196 (2d Cir. 2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on [440.10] subsection 2(c) provides an independent and adequate procedural bar to federal habeas review."). Petitioner has made no attempt to show cause and prejudice, and Petitioner cannot show prejudice as the claims lack merit.

### 2. Analysis

As this Court has found, there is no merit to Petitioner's claims regarding speedy trial violations, the accomplice jury instruction, the circumstantial evidence jury instruction, and the prosecutor's summation as the asserted claims did not amount to violations of federal constitutional law. Thus, counsel's performance arising out of these alleged violations was not deficient or prejudicial to Petitioner as the alleged violations are meritless. The Court is left with Petitioner's remaining ground for asserting an ineffective assistance of counsel claim, that counsel's performance was deficient because counsel improperly solicited testimony from Petitioner about his prior convictions in violation of the trial court's *Sandoval* ruling.

The record does not support a finding that counsel's performance was deficient. The trial court ruled that, if Petitioner testified, the prosecutor could ask him about whether he was convicted in 1995 and 1998 and whether those convictions were felonies. (Tr. 29:13-30:21.) The trial court prohibited the prosecutor from inquiring as to the "underlying facts or specific crimes charged." (Tr. 30:1-4.) During Petitioner's direct testimony, Petitioner's counsel asked Petitioner, "How many times have you been convicted of a crime?," to which Petitioner responded, "Twice." Petitioner further specified that "both" of the crimes were "felonies." (Tr. 437:16-438:9.) The question comported with the court's *Sandoval* ruling. Instead, it was Petitioner's false answer that opened the door to the prosecution's impeachment. At the *Sandoval* hearing, the court permitted the prosecution to ask about Petitioner's 1995 and 1998 convictions, which involved a total of three felony convictions, not two, as Petitioner asserted. Even the prosecutor's effort to clarify the total number of felony convictions was permissible under the *Sandoval* ruling. Further, contrary to Petitioner's contentions, neither the prosecutor

nor defense counsel asked a question that was designed to solicit testimony from Petitioner about his post-arrest felony convictions.

Nonetheless, defense counsel's asking of these questions does not equate to deficient performance. His decision to solicit this testimony during Petitioner's direct testimony, rather than waiting for the prosecutor to solicit it during cross-examination is the kind of tactical decision that courts in the Second Circuit are reluctant to second guess. *See United States v. Luciano*, 158 F. 3d 655, 660 (2d Cir. 1998) (affirming denial of an ineffective assistance of counsel claim as counsel's decision to solicit testimony from a witness about defendant's prior bad acts was a tactical decision to show bias on the part of the witness and to defuse any potential impeachment value for the prosecution); *Torres v. Fisher*, 2010 WL 1338088, at *7 (E.D.N.Y. Mar. 31, 2010) ("An attorney's election to cause the introduction of evidence 'is the kind of tactical decision that courts in the Second Circuit are reluctant to second-guess.'" (citing *Jeremiah v. Artuz*, 181 F. Supp. 2d 194, 205 (E.D.N.Y. 2002)). Attorneys routinely solicit this information during direct testimony to deprive prosecutors of the impeachment value of such testimony, when heard for the first time during cross-examination. Moreover, counsel sought to use this testimony to bolster Petitioner's credibility by demonstrating that Petitioner pled guilty to those crimes because "[he] was guilty," with the obvious inference that he did not plead guilty to the pending weapons charge because he was not guilty of that crime. Again, this tactical decision should not be second-guessed. *See Torres*, 2010 WL 1338088, at *7 (dismissing ineffective assistance of counsel claim as counsel's decision to solicit testimony on direct examination about petitioner's prior bad acts, which the trial court had prohibited the prosecutor from asking, was a tactical decision and counsel's performance fell within the *Strickland* standard of reasonableness); *Jeremiah*, 181 F. Supp. 2d at 205 (dismissing ineffective assistance

of counsel claim and noting that "by establishing that petitioner admitted guilt in his only prior incident with law enforcement, counsel could have hoped that petitioner's testimony . . . [about the pending charge] . . . would appear more credible to the jury").

Finally, to the extent Petitioner contends that his attorney's questioning destroyed his credibility with the jury, the record compels a contrary finding. Other portions of Petitioner's testimony likely harmed his credibility with the jury. For example, when asked why they were on the street on the night of their arrest, Petitioner and Pabon indicated that they were walking to meet two "girls," but Petitioner and Pabon contradicted each other as to the names of the girls. (*Compare* Tr. 448:13-449:19; *with* Tr. 505:12-21.) They also contradicted each other as to whether Pabon assaulted anyone prior to their hiding underneath the vehicles. (*Compare* Tr. 463:1-10; *with* Tr. 506:16-17.) And they contradicted each other as to their locations underneath the vehicle. (*Compare* Tr. 440:24-441:10, 442:12-14; *with* Tr. 521:19-22.)

For all of the reasons set forth above, the state court's resolution of this claim did not contravene or unreasonably apply settled Supreme Court law. Accordingly, Petitioner's ineffective assistance of counsel claim is dismissed with prejudice.

I.     **Actual Innocence**

The Court construes the Petition as raising a claim of actual innocence as Petitioner states that he "is actually innocent of the crimes charged in the indictment," and cites to *Schlup v. Delo*, 513 U.S. 298 (1995). (Pet. ¶ 7.) Petitioner did not raise this claim in any of his state court proceedings. Thus, he failed to exhaust this claim. Moreover, "'actual innocence' itself is not a free-standing cognizable ground for habeas relief." *See Russell v. Rock*, 2008 WL 5333327, at *5 (E.D.N.Y. Dec. 19, 2008) (dismissing petitioner's claim of actual innocence); *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence . . . have never been held to state

a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Even if the Court were to consider Petitioner's free-standing actual innocence claim, he has presented no "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324 (discussing actual innocence claims and explaining that "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial"). Accordingly, Petitioner's claim of actual innocence is dismissed with prejudice.

**CONCLUSION**

For the reasons set forth above, the Petition is denied in its entirety and the case is dismissed with prejudice. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).


SO ORDERED.

Dated: Brooklyn, New York
      August 30, 2012

                                   /s/
                              DORA L. IRIZARRY
                        United States District Judge